## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **AUGUST B. KREIS, IV,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 21-CV-2360** |
| | : | |
| **NORTHAMPTON COUNTY** | : | |
| **PRISON**, *et al.*, | : | |
| **Defendants.** | : | |

### MEMORANDUM

**RUFE, J.**                                                          **SEPTEMBER 14, 2022**

Plaintiff August B. Kreis, IV filed a *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983 concerning events that allegedly occurred while he was a pretrial detainee at Northampton County Prison.[1] Kreis also filed a Motion for Leave to Proceed *in Forma Pauperis*.[2] By Order dated September 29, 2021, the Court granted Kreis leave to proceed *in forma pauperis,* dismissed his Second Amended Complaint for failure to comply with Rules 8 and 10 of the Federal Rules of Civil Procedure, and granted leave to file a Third Amended Complaint (the "TAC").[3] In addition, Kreis has been granted leave to file a supplement to the TAC.[4] Upon screening of the supplemented Third Amended Complaint, Kreis will be permitted to proceed with certain claims, other claims will be dismissed with prejudice, and the remaining claims will be dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Kreis will be granted the option to file a Fourth Amended Complaint or proceed only on those claims that have not been dismissed.

---

[1] ECF No. 2.

[2] ECF No. 6.

[3] ECF No. 35. The TAC is filed at ECF 40.

[4] ECF 43.

I.      **FACTUAL ALLEGATIONS**[5]

Kreis asserts claims against the two groups of Defendants, The first comprises

Northampton County Department of Corrections ("DOC") Administrator James C. Kostura,

Deputy Warden John Klienman, Deputy Warden Mark T. Bartholomew, Administrator John

Harmon, Professional Responsibility Investigator Charles Horvath, Lieutenant Jeremy

Ackerman, Lieutenant Michael Gazzano, Corrections Officer ("CO") J. Santiago, Corrections

Emergency Response Team ("CERT") CO Arias, CERT CO Andrew Kuczma, CO Walker, and

CO Douglas (collectively "the DOC Defendants"). The second group is composed of Primecare

Medical, Inc. and the following individuals who are alleged to be Primecare employees:

physician Dr. Wahlcheski, Medical Administrator Jenn Keller, Physician's Assistant Polina,

Director of Nursing Shane P. Caffrey, and LPNs Nicki and Kerstyn (collectively "the Primecare

Defendants"). Kreis asserts claims against the Defendants in their individual capacities, and also

asserts official capacity claims against the Primecare Defendants.

Kreis includes a handwritten addendum ( the "Statement of Claim") to the prisoner civil

rights form complaint he completed when preparing the TAC. The Statement of Claim is written

in journal form and includes lengthy, detailed allegations describing thirty-four events that Kreis

alleges give rise to his claims. The Supplement follows the same format. It describes thirteen

incidents that Kreis alleges give rise to constitutional claims. Because the Court is conducting a

statutory screening, the allegations will be briefly summarized and the Court will include the

relevant factual allegations along with the discussion of the applicable legal principles. Kreis

---

[5] The allegations set forth in this Memorandum are taken from the Third Amended Complaint and Kreis's
Supplement. The Court adopts the pagination assigned by the EC/ECF docketing system.

alleges that his First, Fifth[6], Eighth, and Fourteenth Amendment rights have been violated.[7] He claims that he has suffered injuries including mental anguish, jaw pain, head trauma, lacerations, bruising, severe chest pain, bleeding, throat burning, left sided sciatic, pain at his tail bone, and severe headaches.[8] He seeks recovery of $1,200 for his broken CPAP machine and an award of punitive damages for the constitutional violations he claims to have suffered.[9]

## II.     STANDARD OF REVIEW

Because Kreis is proceeding *in forma pauperis*, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the supplemented TAC if it fails to state a claim upon which relief may be granted. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6).[10] The Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."[11] "At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, .

---

[6] The Fifth Amendment's due process clause does not apply to state actors, but "restrict[s] only federal government action." *Nguyen v. U.S. Catholic Conf.*, 719 F.2d 52, 54 (3d Cir. 1983) (citing *Pub. Utils. Comm'n v. Poliak*, 343 U.S. 451, 461 (1952)). The only Fifth Amendment rights to have been applied to the states through the Fourteenth Amendment are the rights against self-incrimination, takings, and double jeopardy. *McDonald v. City of Chicago*, 561 U.S. 742, 765 n.12 (2010). Upon review of the supplemented TAC, the Court cannot identify any allegations implicating these rights. Accordingly, Kreis's § 1983 claim based on the alleged violation of his Fifth Amendment rights will be dismissed with prejudice.

[7] TAC at 4; Supp. at 4.

[8] TAC at 24.

[9] TAC at 24; Supp. at 4.

[10] *Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999).

[11] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).

. . contains facts sufficient to state a plausible [] claim.'"[12] Conclusory allegations do not

suffice.[13] As Kreis is proceeding *pro se*, the Court construes his allegations liberally.[14]

## III.   DISCUSSION

Construing the supplemented TAC liberally, the Court understands Kreis to be asserting

claims against the individual Defendants based on the use of excessive force, issuance of false

misconducts and placement in segregated housing, deliberate indifference to his serious medical

needs, failure to protect him, unconstitutional conditions of confinement, failure to properly

address grievances, and retaliation. Kreis also asserts official capacity claims against the

Primecare Defendants. He seeks an award of money damages for alleged violations of his

constitutional rights.

Federal constitutional claims may be brought pursuant to 42 U.S.C. § 1983. "To state a

claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution

and laws of the United States, and must show that the alleged deprivation was committed by a

person acting under color of state law."[15] Additionally, "[a] defendant in a civil rights action

must have personal involvement in the alleged wrongs" to be liable.[16]

### A.   Excessive Force Claims

Kreis alleges that on December 8, 2020, he experienced a seizure. Kreis alleges that

during the seizure and while he was handcuffed to a chair, he put his right hand on Defendant

---

[12] *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)).

[13] *Iqbal*, 556 U.S. at 678.

[14] *Vogt v. Wetzel*, 8 F. 4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

[15] *West v. Atkins*, 487 U.S. 42, 48 (1988).

[16] *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

Kuczma and in response, Defendant Ackerman "drive tased" Kreis multiple times in his chest over his VNS implant.[17] Kreis also alleges that on April 12, 2021, during a cell search, Defendant Gazzano slammed Kreis backwards in the chest, slammed his head against the bunk, "arm-barred" Kreis and pushed him to the floor, then slammed Kreis's head into the desk. Kreis alleges that once he was on the floor, Defendant Gazzano kneeled on his tail bone causing pain.[18] Kreis thus apparently asserts excessive force claims against Defendants Ackerman and Gazzano.

Because Kreis was a pretrial detainee when these incidents allegedly occurred, the Due Process Clause of the Fourteenth Amendment governs his excessive force claims.[19] To state a due process violation based on excessive force, a pretrial detainee must allege plausibly that "that the force purposely or knowingly used against him was objectively unreasonable." [20] "Considerations such as the following may bear on the reasonableness or unreasonableness of the force used: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting."[21] Whether unreasonable force has been used against a detainee "requires 'careful attention to the facts and circumstances of each particular case.'" [22] Courts should analyze "these circumstances 'from the perspective of a reasonable officer on the scene'" while keeping in mind that decisions about force require the

---

[17] TAC at 13. The Court understands "VNS implant" to refer to a vagus nerve stimulation implant, used to control epileptic seizures.

[18] *Id.* at 15.

[19] *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015) ("[T]he Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment.") (internal quotation and citation omitted).

[20] *Id.* at 396-97.

[21] *Id.* at 397.

[22] *Jacobs v. Cumberland Cnty.*, 8 F.4th 187, 194 (3d Cir. 2021) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

expertise of correctional officers, "'who must have substantial discretion to devise reasonable solutions to the problems they face.'"[23] Kreis has alleged plausible excessive force claims against Defendants Ackerman and Gazzano and these claims will proceed at this time.

### B.    First Amendment Retaliation Claims

Kreis alleges that he filed two grievances after the incident with Defendant Gazzano, which were denied by Defendant Bartholomew. Kreis further alleges that the grievances were used by Defendant Horvath, with the knowledge of Defendant DOC Administrator Kostura, as a basis for filing criminal charges against Kreis.[24] The Court understands Kreis to be asserting a First Amendment retaliation claim against Horvath as a primarily responsible state actor, and against Kostura in his capacity as a supervisor. In order to state a plausible First Amendment retaliation claim, a prisoner must allege that: (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) the constitutionally protected conduct was "a substantial or motivating factor" for the adverse action.[25] Because a prisoner's filing of a grievance is constitutionally protected conduct, the claim will be not be dismissed as to Horvath at this time.[26]

Moreover, "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct."[27] As Kreis alleges

---

[23] *Id.* at 195 (quoting *Kingsley*, 576 U.S. at 397 & 399).

[24] TAC at 16.

[25] *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001); *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003); *Coit v. Garman*, No. 19-2580, 2020 WL 2125780, at *3 (3d Cir. May 5, 2020).

[26] *see Robinson v. Taylor*, 204 F. App'x 155, 157 (3d Cir. 2006) (citing *Mitchell*, 318 F.3d at 530; *Davis v. Goord*, 320 F.3d 346, 35-53 (2d Cir. 2003).

[27] *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015).

that Kostura was personally involved in the alleged retaliatory conduct, the claim as to Kostura will move past screening.

### C.    Failure to Protect

Kreis alleges that on March 8, 2021, he was scheduled to go to St. Luke's Anderson Campus prior to scheduled surgery. He alleges that immediately prior to the visit, Defendant Kuczma told Kreis and his cellmate to pack their belongings as they were moving next door. Kreis alleges that he told Defendant Kuczma that the inmate in the next cell had talked about assaulting Kreis. Defendant Kuczma is alleged to have ignored this warning and moved Kreis into the next cell, where Kreis alleges he was immediately punched and kicked by the inmate.[28] The Court construes these allegations liberally and understands Kreis to be asserting a claim against Defendant Kuczma based on a failure to protect theory.

For a failure to protect claim against a prison official to be plausible, a plaintiff must allege that: (1) the conditions in which he was incarcerated posed a substantial risk of serious harm; (2) the prison official acted with deliberate indifference to that substantial risk of serious harm; and (3) the official's deliberate indifference caused harm.[29] Deliberate indifference in the context of a failure to protect claim requires the plaintiff to allege plausibly that the defendant prison officials "must actually [have been] aware of the existence of the excessive risk; it is not sufficient that [prison officials] should have been aware."[30] "However, subjective knowledge on the part of the official can be proved by circumstantial evidence to the effect that the excessive risk was so obvious that the official must have known of the risk." [31] Kries has alleged a

---

[28] TAC at 14.

[29] *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Hamilton v. Leavy*, 117 F.3d 742, 746 (3d Cir. 1997); *see also Travillion v. Wetzel*, 765 F. App'x 785, 790 (3d Cir. 2019) (*per curiam*).

[30] *Beers-Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001).

[31] *Id.* (citing *Farmer*, 511 U.S. at 844).

sufficiently plausible claim for failure to protect against Defendant Kuczma to move beyond screening.

### D.    Deliberate Indifference Claims Against Non-Medical Personnel

Kreis alleges that in February 2021, he asked Defendants Santiago and Arias to request medical care for him as Kreis believed he was about to experience a seizure. He explained that "something did not feel right," and he "was having an aura to a seizure."[32] Kreis alleges that they refused, stating that because he was talking to them, he did not need medical care. Kreis alleges that shortly thereafter, he experienced a seizure, a "Code Blue" was called, and he was taken for medical care.[33] Kreis also alleges that Defendant CO Walker, the escort for the medical staff when they are distributing medication, only whispers to Kreis when asking if he wants his medication, knowing that Kreis is asleep and cannot hear Walker over the noise created by his CPAP device. Kreis alleges that when he does not wake up, Defendant Walker notes that he refused his medication. Kreis alleges that on October 11, 2021, he did not receive his medication because Defendant Walker did not wake him, allegedly stating, "that isn't my job."[34] The Court understands Kreis to be asserting deliberate indifference claims against Defendants Santiago, Arias, and Walker.

To state a constitutional claim based on the failure to provide medical treatment, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs.[35] A prison official is not deliberately indifferent "unless the official

---

[32] TAC at 13.

[33] TAC at 13.

[34] TAC at 23.

[35] *See Farmer*, 511 U.S. at 835. As it appears that Kreis was a pretrial detainee at the time of the events in question, the Fourteenth Amendment governs his claims. *See Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005). However, the standard under the Eighth Amendment and Fourteenth Amendment for claims related to a prisoner's medical needs is essentially the same for purposes of the analysis. *See Parkell v. Morgan*, 682 F. App'x 155, 159 (3d Cir. 2017) (per curiam); *see also Moore v. Luffey*, No. 18-1716, 2019 WL 1766047, at *3 n.2 (3d Cir. Apr. 19, 2019)

knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."[36] "A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."[37] Deliberate indifference is properly alleged "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment."[38] A serious medical need exists where "failure to treat can be expected to lead to substantial and unnecessary suffering."[39] Allegations of medical malpractice and mere disagreement regarding proper medical treatment are insufficient to establish a constitutional violation.[40] Furthermore, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable.[41] Kreis has alleged plausible deliberate indifference claims against Defendants Santiago, Arias, and Walker.

### E.     Due Process – False Misconducts and Placement in "The Hole"

Kreis alleges that after the alleged April 12, 2021 assault by Defendant Gazzano, Gazzano issued a false misconduct which resulted in Kreis being placed on "High Risk" for a

---

(declining to address whether a new standard applies to claims raised by pretrial detainees based on issues related to medical care).

[36] *Id.* at 837.

[37] *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted).

[38] *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

[39] *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991).

[40] *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004).

[41] *See Rode*, 845 F.2d at 1207; *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)).

month.[42] Kreis alleges that on August 24, 2021, Defendant CO Douglas wrote a false misconduct which resulted in Kreis remaining in "the hole" for an additional 45 days.[43] Kreis alleges that on September 21, 2021, he spoke with Defendant Klienman about an allegedly false misconduct that had resulted in his placement in solitary confinement. Kreis alleges that he appealed the misconduct, and Defendant Klienman stated he would look into it. Kreis alleges that the appeal was denied.[44] The Court understands Kreis to be asserting due process claims against Defendants Gazzano and Douglas for an allegedly baseless placement in segregated housing and an allegedly baseless continuation of that status.[45]

The United States Court of Appeals for the Third Circuit has held that, "[g]enerally, prisons may sanction a pretrial detainee for misconduct that he commits while awaiting trial, as long as it is not a punishment for the 'underlying crime of which he stands accused.'"[46] However, while "'pretrial detainees do not have a liberty interest in being confined in the general prison population, they do have a liberty interest in not being detained indefinitely in [disciplinary segregation] without explanation or review of their confinement.'"[47] With respect

---

[42] TAC at 16. Kreis also alleges that he filed two grievances after the alleged assault by Defendant Gazzano. TAC at 16. Even construing Kreis's allegations liberally, it is not clear that Kreis intended to allege that Gazzano's false misconduct was issued in retaliation for Kreis's filing of grievances. Kreis may address this uncertainty in his Fourth Amended Complaint should he choose to file one.

[43] TAC at 20. In the supplemented TAC, Kreis refers to placement in "High Risk," "the hole," and "E-Tier." It is unclear from the pleadings whether all of these references are to the same placement. Construed liberally, however, they all appear to be some form of segregated placement, rather than general population housing.

[44] TAC at 16. Kreis also alleges that after the alleged December 8, 2020 "drive tase" incident involving Defendant Ackerman, Ackerman and Klienman issued him a false misconduct, on the ground that Kreis was in control of himself and touched Defendant Kuczma on purpose. TAC at 13. However, it is unclear whether any consequences resulted from this alleged false misconduct.

[45] Kreis does not allege that Defendant Klienman participated in his placement in segregated housing, only that Kreis allegedly requested Klienman's assistance. Kreis cannot state a plausible due process claim against Klienman in the absence of allegations that he personally participated in the placement. *Rode*, 845 F.2d at 1207.

[46] *Kanu v. Lindsey*, 739 F. App'x 111, 116 (3d Cir. 2018) (quoting *Rapier v. Harris*, 172 F.3d 999, 1003-06 (7th Cir. 1999)).

[47] *Singleton v. Superintendent Camp Hill SCI*, 747 F. App'x 89, 92 (3d Cir. 2018) (*per curiam*) (quoting *Bistrian v. Levi*, 696 F.3d 352, 375 (3d Cir. 2012)).

to pretrial detainees, "the imposition of disciplinary segregation for violation of prison rules and regulations cannot be imposed without providing the due process protections set forth in *Wolff v. McDonnell*, 418 U.S. 539 . . . (1974)."[48] Such protections "include the right to receive written notice of the charges at least 24 hours before the hearing, the opportunity to present witnesses and documentary evidence, and a written statement of the reasons for the disciplinary action taken and the supporting evidence."[49]

Moreover, while "the filing of a fraudulent misconduct report and related disciplinary sanctions do not without more violate due process,"[50] "[d]ue process is satisfied where an inmate is afforded an opportunity to be heard and to defend against the allegedly false misconduct reports."[51] Finally, lodging a false accusation is not a sufficient basis for a due process claim.[52]

"[D]etention officials' restrictions on pretrial detainees will constitute punishment prohibited by the Due Process Clause when: (1) "there is a showing of express intent to punish on the part of [those] [ ] officials"; (2) "the restriction or condition is not rationally related to a legitimate non-punitive government purpose," i.e., "if it is arbitrary or purposeless"; or (3) "the

---

[48] *Kanu*, 739 F. App'x at 116.

[49] *Id.* (citing *Wolff*, 418 U.S. at 563-66); *see also Stevenson v. Carroll,* 495 F.3d 62, 70 (3d Cir. 2007).

[50] *Seville v. Martinez*, 130 F. App'x 549, 551 (3d Cir. 2005) (*per curiam*),

[51] *Thomas v. McCoy*, 467 F. App'x 94, 97 (3d Cir. 2012) (*per curiam*); *see also Smith v. Mensinger*, 293 F.3d 641, 654 (3d Cir. 2002) ("[S]o long as certain procedural requirements are satisfied, mere allegations of falsified evidence or misconduct reports, without more, are not enough to state a due process claim.").

[52] *See London v. Evans*, Civ. A. No. 19-559, 2019 WL 2648011, at *3 (D. Del. June 27, 2019) ("The filing of false disciplinary charges does not constitute a claim under § 1983 so long as the inmate was granted a hearing and an opportunity to rebut the charges."); *King v. Quigley*, No. 18-5312, 2019 WL 342710, at *2 (E.D. Pa. Jan. 25, 2019) (dismissing detainee's due process claims upon screening, where claims were based "solely on the basis that he believe[d] the misconducts issued against him were false" and detainee did not allege he was not provided applicable protections; *McDowell v. Deparlos*, No. 15-00487, 2017 WL 1158093, at *8-*9 (M.D. Pa. Feb. 2, 2017) (dismissing detainee's due process claim based on false misconduct report where detainee did not "allege that he was not provided with an explanation for his transfer to the SMU, nor that he was denied an opportunity to respond to the transfer, and he was held there in administrative custody for only fifteen days before his disciplinary hearing occurred, not indefinitely"), *report and recommendation adopted*, 2017 WL 1134407 (M.D. Pa. Mar. 27, 2017).

restriction is excessive in light of that purpose."[53] "[M]aintaining internal security and order in jails and prisons are 'legitimate governmental objectives'" that may justify placement of a detainee in administrative segregation, and "courts must give prison officials considerable discretion to manage internal security in their institutions."[54] In other words, if officials can articulate a legitimate managerial concern for placement of the detainee in restricted housing, a substantive due process claim is foreclosed.[55]

From a procedural standpoint, "[t]he degree of process required varies depending on the reason for the transfer, with greater process accorded to prisoners who are confined for disciplinary infractions than those moved for purely administrative reasons."[56]

Kreis's due process claim based on his placements in restricted housing is conclusory and lacks key information that would allow the Court to properly evaluate it. For example, Kreis states that his appeal of a misconduct was denied, suggesting that some process was provided. However, on these sparse allegations it is unclear whether the process provided was sufficient to satisfy the *Wolff* standard. While the claim is not plausible as alleged, because on these sparse facts the Court cannot state that Kreis will never be able to allege a plausible due process claim, he will be granted leave to amend this claim.

---

[53] *Steele v. Cicchi*, 855 F.3d 494, 504 (3d Cir. 2017) (quoting *Stevenson*, 495 F.3d at 67-68) (alterations in original).

[54] *Id.*

[55] *Stevenson*, 495 F.3d at 69 ("Although the substantive and procedural due process evaluations are distinct, a showing by the prison officials that a restrictive housing assignment is predicated on a legitimate managerial concern and is therefore not arbitrary or purposeless, will typically foreclose the substantive due process inquiry").

[56] *Id.* at 70. "[T]he procedures required by *Wolff v. McDonnell,* 418 U.S. 539 (1974), apply if the restraint on liberty is imposed for disciplinary reasons; if the restraint is for 'administrative' purposes, the minimal procedures outlined in *Hewitt v. Helms,* 459 U.S. 460 (1983) are all that is required." *Lewis v. Williams*, Civ. A. No. 05-013, 2011 WL 2441377, at *17 (D. Del. June 13, 2011) (citing *Stevenson*, 495 F.3d at 70).

F.      **Conditions of Confinement Claims**

Kreis alleges that on March 10, 2021, upon returning from surgery on his VNS implant, he was placed in a dirty cell infested with roaches even though he had open surgical wounds.[57] He alleges that while he was assigned to "High Risk" housing in approximately May 2021, he was permitted only three showers.[58] He further alleges that between July 13 and July 22, 2021, he was not given access to showers or recreation, and was kept in his cell on orders of the administration because the facility was on lock down.[59] The Court understands Kreis to be asserting a conditions of confinement claim based on the denial of showers and recreational time while he was housed on E-Tier, and on the condition of the cell he was placed in following surgery.

To establish a basis for a Fourteenth Amendment violation, a prisoner must allege that his conditions of confinement amount to punishment.[60] "Unconstitutional punishment typically includes both objective and subjective components."[61] "[T]he objective component requires an inquiry into whether the deprivation was sufficiently serious and the subjective component asks whether the officials acted with a sufficiently culpable state of mind."[62]

Only conditions of confinement that "cause [detainees] to endure genuine privations and hardship over an extended period of time" satisfy the objective prong of a due process violation.[63] Moreover, "a 'particular measure amounts to punishment when there is a showing of express intent to punish on the part of detention facility officials, when the restriction or

---

[57] TAC at 14.

[58] TAC at 16.

[59] TAC at 23.

[60] *Bell v. Wolfish*, 441 U.S. 520, 538 (1979).

[61] *Stevenson*, 495 F.3d at 68.

[62] *Id.* (internal quotations and alterations omitted).

[63] *Bell*, 441 U.S. at 542.

condition is not rationally related to a legitimate non-punitive government purpose, or when the restriction is excessive in light of that purpose.'"[64] Courts should consider the totality of the circumstances in evaluating such a claim.[65] Furthermore, "[i]n determining whether restrictions or conditions are reasonably related to the Government's interest in maintaining security and order and operating the institution in a manageable fashion," courts are obligated to keep in mind that "such considerations are peculiarly within the province and professional expertise of corrections officials . . . ."[66] To satisfy the subjective component of the analysis, a prisoner must assert that prison officials acted with deliberate indifference, meaning that they consciously disregarded a serious risk to the detainee's health or safety.[67]

Kreis alleges that he was denied showers and recreational time while housed for nine days on E-Tier. He also alleges that when he was placed on "High Risk" for a month, he was permitted only three showers and that between July 13 and July 22, 2021, he was not given access to showers or recreation. The denial of showers and exercise for short periods does not constitute the type of serious deprivation that amounts to a constitutional violation.[68] This claim

---

[64] *Bistrian*, 696 F.3d at 373 (quoting *Stevenson*, 495 F.3d at 68); *Steele*, 855 F.3d at 504.

[65] *Bistrian*, 696 F.3d at 373 ("In evaluating a pretrial detainee's claim of unconstitutional punishment, courts must examine the totality of the circumstances within the institution.").

[66] *Stevenson*, 495 F.3d at 68 n.3.

[67] *See Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991); *see also Wilson v. Burks*, 423 F. App'x 169, 173 (3d Cir. 2011) (*per curiam*) ("'[T]he official must both be aware of facts from which the inference could be drawn that a substantial harm exists, and he must also draw that inference.'") (quoting *Farmer*, 511 U.S. at 837).

[68] *See, e.g., Fortune v. Hamberger*, 379 F. App'x 116, 122 (3d Cir. 2010) ("Fortune complained of his inability to adequately shower and exercise for a period of fifteen days. Although it is not clear how many times Fortune believes that he should have been permitted to engage in those activities in addition to the time he was already given to do so, he does not allege that he suffered any harm as a result of the denial of additional showers and exercise."); *Coleman*, No. 18-1152, 2018 WL 6618459, at *8, *report and recommendation adopted*, 2018 WL 6618408 (W.D. Pa. Dec. 18, 2018) ("[B]eing denied a shower for four days does not constitute a serious enough deprivation of sufficient duration to establish a constitutional violation") (citing cases); *Barndt v. Wenerowicz*, No. 15-2729, 2016 WL 6612441, at *4 (E.D. Pa. Nov. 8, 2016), *aff'd*, 698 F. App'x 673 (3d Cir. 2017) (denial of showers and out of cell exercise for twenty-eight days did not violate Eighth Amendment when plaintiff did not suffer ill effects and had access to running water in his cell); *Barnes v. Cnty. of Monroe*, 85 F. Supp. 3d 696, 738 (W.D.N.Y. 2015) ("To the extent Plaintiff alleges that his inability to shower over the course of four days constitutes a constitutional deprivation, his claim must fail. Even a two-week suspension of shower privileges does not constitute a denial of 'basic hygienic needs.'") (quoting *McCoy v. Goord*, 255 F. Supp. 2d 233, 260 (S.D.N.Y. 2003)).

will be dismissed because it is not plausible. Kreis does not identify any individual DOC Defendant responsible for this alleged deprivation. Kreis will not be permitted to amend this claim, as it would be futile.

With regard to the claim that he was placed in a filthy cell infested with roaches after surgery, Kreis does not identify any DOC Defendant responsible for this alleged violation. The Court cannot determine from the allegations whether the conditions were so "shockingly unsanitary" as to state an Eighth Amendment claim, or how long he was in the cell.[69] This claim will be dismissed without prejudice and with leave to amend.

### G.     Claims Against Primecare and its Employees

#### 1.     Official Capacity Claims

Kreis asserts individual and official capacity claims against Primecare and its employees Wahlcheski, Keller, Polina, Caffrey, Nicki and Kerstyn. Construing the supplemented TAC liberally, the Court understands Kreis to be asserting claims against Primecare based on the following allegations. Kreis alleges that in late March 2021, he was escorted to the medical office, where Defendant Keller returned his repaired CPAP machine to him. Kreis alleges that he had been without the machine for two and one half months after another inmate broke it. He alleges he was told that "Corporate" had not approved repair of the LCD screen, but that it was not necessary and could be fixed when Kreis was released.[70] Kreis also alleges that Primecare employees substituted generic medications instead of brand name medications as prescribed, with the result that the experienced headaches, dizziness, and lightheadedness, and frequently felt as if he was going to have a seizure.[71] He further alleges that Primecare maintains a practice

---

[69] *Taylor v. Riojas*, -- U.S. --, 141 S. Ct. 52 , 53 (2020).

[70] TAC at 14.

[71] TAC at 19.

of not approving medical expenses as a way to save money, and distributes generic medications for the same reason. He also alleges that Primecare does not review inmates' medical record to ensure proper continuation of care, and that it does not monitor its employees.[72] Kreis alleges that Primecare does not monitor, discipline or admonish its employees, and that those employees do not administer adequate medical care.[73]

To the extent that Kreis seeks to assert claims against the individual Primecare employees in their "official capacities," such claims are arguably not cognizable because although Primecare is a state actor for purposes of § 1983, it is a private entity. "Generally, a suit against a [ ] public officer in his or her official capacity is used to compel that officer to take some official action [and that] concept . . . is inapplicable to suits against private parties where the entity is also susceptible to suit."[74] Even if official capacity suits against individuals who work for private companies are cognizable, the suit would, in effect, be one against the company for whom that individual works.[75] Therefore, the official capacity claims against Primecare employees Wahlcheski, Keller, Polina, Caffrey, Nicki, and Kerstyn will be dismissed with prejudice.

The United States Court of Appeals for the Third Circuit has held that "a private health company providing services to inmates 'cannot be held responsible for the acts of its employees under a theory of respondeat superior or vicarious liability.'"[76] Rather, in order to hold a private health care company like Primecare liable for a constitutional violation under § 1983, Kreis must

---

[72] TAC at 20.

[73] (Supp. at 12.)

[74] *Owens v. Connections Cmty. Support Programs, Inc.,* 840 F. Supp. 2d 791, 796 (D. Del. 2012).

[75] *See Kentucky v. Graham,* 473 U.S. 159, 105 (1985).

[76] *Sims v. Wexford Health Sources*, 635 F. App'x 16, 20 (3d Cir. 2015) (quoting *Natale v. Camden County Corr. Facility*, 318 F.3d 575, 583 (3d Cir. 2003)).

allege the provider had "a relevant . . . policy or custom, and that the policy caused the constitutional violation [he] allege[s]."[77]

Kreis alleges broadly that Primecare has a policy of not paying for items to save money, that it purchases only generic drugs for the same reason, and that it does not supervise or discipline its employees. Kreis's allegations are undeveloped and insufficient to allege a plausible claim. "'Policy is made when a decisionmaker possess[ing] final authority to establish [a] policy with respect to the action issues an official proclamation, policy, or edict.'"[78] "'Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'"[79] For a custom to be the proximate cause of an injury, a plaintiff must establish that the Defendant "had knowledge of similar unlawful conduct in the past, failed to take precautions against future violations, and that its failure, at least in part, led to [plaintiff's] injury."[80] Allegations that simply paraphrase the policy or custom definitions are too vague and generalized to support a claim.[81] Because Kreis's allegations are conclusory and undeveloped and do not state a plausible claim against Primecare based on implementation of a policy or custom. However, because the Court cannot say at this time that Kreis can never assert a

---

[77] *Natale*, 318 F.3d 575, 583-84 (citing *Bd. of the Cnty. Comm'rs of Bryan Cnty., Oklahoma v. Brown*, 520 U.S. 397, 404 (1997)); *see also Lomax v. City of Philadelphia*, Civ. A. No. 13-1078, 2017 WL 1177095, at *3 (E.D. Pa. Mar. 29, 2017) ("Because [defendant] is a private company contracted by a prison to provide health care for inmates, . . . it can only be held liable for constitutional violations if it has a custom or policy exhibiting deliberate indifference to a prisoner's serious medical needs.") (citations and quotations omitted).

[78] *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)).

[79] *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)).

[80] *Id.* (internal quotations and alterations omitted).

[81] *See, e.g.*, *Szerensci v. Shimshock*, Civ. A. No. 20-1296, 2021 WL 4480172, at *7 (W.D. Pa. Sept. 30, 2021) (holding that, in a similar municipal policy or custom case, that "Plaintiffs' conclusory allegation, which generally paraphrases the relevant standard, is insufficient to state a claim for § 1983 liability under *Monell*.") (citing cases).

plausible claim against Primecare, the dismissal will be without prejudice and Kreis will be permitted to amend this claim if he is capable of curing the defect the Court has identified.

**2.      Individual Capacity Claims Against Medical Personnel**

Kreis's claims against Primecare employees rest on his contention that he was inappropriately removed from medical observation, he was denied distilled water for his CPAP machine, and he was denied care on several occasions. Kreis alleges that during his intake at Northampton County Prison, he advised non-Defendants CO J. Wagner and Primecare RN Cathrine that his medical bracelet was for epilepsy and RN Cathrine commented that Kreis belonged on "medical observation" because of this condition.[82] However, on June 24, 2021, after returning from an arraignment, Kreis was told he was being removed from "medical observation" and placed in "the hole." Kreis attributes this decision to Defendants Polina and Keller.[83]

Kreis alleges that after he was removed from "medical observation," he did not have access to consistent medical care. He alleges that on July 24, 2021, he was advised that Defendant Caffrey had not reordered his seizure medication, with the result that he missed seven doses and had two seizures over the weekend of July 24 and 25, 2021.[84] He alleges that Defendant Wahlcheski was aware of the severity of his epilepsy and ignored Defendant Polina's removal of Kreis from medical observation.[85]

---

[82] TAC at 17.

[83] Kreis also alleges that earlier in June, after he had filed several grievances regarding his medical care, he was told by Defendant Polina, "Mind your lane Kreis." TAC at 17. It is unclear from Kreis's allegations whether he intends to alleges that his placement in "the hole" by Defendant Polina was retaliatory. On the facts provided, such a claim is not plausible. If Kreis intended to assert a retaliation claim, he may do so in his Fourth Amended Complaint.

[84] TAC at 19.

[85] Supp. at 13.

Kreis alleges that he grieved his removal from medical observation and that he received a response to the grievance.[86] The response is attached to the Supplement and states "I have reviewed your grievance dated 21 October 2021 and have found it NOT GRIEVABLE. You have an enemy/keep separate listed who is also housed in the Medical Housing Unit. Therefore, you are housed on E Tier."[87] Kreis alleges that Defendant Bartholomew issued this response, with the knowledge of Defendant Harmon (who is alleged to be responsible for housing decisions), both of whom are alleged to be aware of the risk to Kreis's life posed by removal from medical observation.[88] Kreis alleges that he spoke to Defendant Caffrey about the decision to remove him from medical observation, and whether he would be returned to observation in light of an October 20 seizure. Caffrey is alleged to have responded that he would speak with Defendant Polina.[89] Kreis alleges that he received no monitoring for his epilepsy after his stay in "the hole" was extended for 45 days in late August 2021, despite knowledge of the staff that Kreis required medication for his conditions.[90] Kreis alleges that on September 16, 2021, he asked Defendant Keller why he was still not being monitored medically. She is alleged to have responded that the administration refused to allocate a four-man cell to one inmate. Kreis also alleges he was told by Defendants Polina and Caffrey that "medical has nothing to do with where they chose to house me."[91]

---

[86] Supp. at 13.

[87] Supp. at 21.

[88] Supp. at 15. It is well-settled that prisoners have no inherent constitutional right to placement in any particular prison, to any particular security classification, or to any particular housing assignment. *See Wilkinson v. Austin*, 545 U.S. 209, 221-22 (2005) (holding that the Constitution does not give rise to liberty interest in avoiding transfers to more adverse conditions of confinement); *Lane v. Tavares*, No. 14-991, 2016 WL 7165750, at *16 (M.D. Pa. July 12, 2016) (same).

[89] Supp. at 16.

[90] TAC at 20.

[91] TAC at 20.

The Court understands Kreis to be asserting deliberate indifference claims against Defendants Polina, Keller and Harmon based on his removal from medical observation. Kreis has not plausibly pled that he requires constant medical observation. He does not allege that a physician placed him on medical observation. Moreover, he alleges that he was removed from medical observation by medical personnel. He clearly disagrees with this decision, but his disagreement with his treatment does not give rise to a constitutional claim.[92] Medical negligence alone cannot support a deliberate indifference claim, nor can a mere disagreement over the professional judgment of a health care provider.[93] Kreis's deliberate indifference claims against Polina, Keller and Harmon are dismissed as not plausible. Because the Court cannot state with certainty that Kreis will never be able to state a plausible claim, he will be permitted to amend to cure the deficiencies identified by the Court.

### 2.       Claim Based on Failure to Provide Distilled Water

The Court also understands Kreis to be asserting a deliberate indifference claim against Primecare employees Kerstyn and Caffrey based on their alleged refusal to provide distilled water for his CPAP.[94] Kreis alleges that on October 23, 2021, despite several requests, he was unable to obtain distilled water for his CPAP. Non-Defendant CO Cleffi is alleged to have requested distilled water on Kreis's behalf, but Defendant Kerstyn is alleged to have responded, "Kreis needs to wait a while, I am busy."[95] Kreis alleges that he did not receive any distilled

---

[92] *See Baskerville v. DeRose*, No. 15-0209, 2018 WL 1083987, at *5 (M.D. Pa. Feb. 28, 2018), *subsequently aff'd sub nom. Baskerville v. Young*, 741 F. App'x 61 (3d Cir. 2018) ("Baskerville also contends that Young never placed him on 'medical observation' as planned . . . . Even if Young's intention was to place Baskerville on 'medical observation,' which is unclear from the medical notes, the failure to implement such a plan does not rise to the level of deliberate indifference. At most, it constitutes negligence.")

[93] *White v. Napolean*, 897 F.2d 103, 108-10 (3d Cir. 1990). *See also Lanzaro*, 834 F.2d at 346 (holding that when an inmate is provided with medical care and the dispute is over the adequacy of that care, a deliberate indifference claim does not exist; mere disagreement as to the proper medical treatment does not support a deliberate indifference claim.) (citations omitted).

[94] TAC at 18.

[95] Supp. at 14.

water that night.[96] Kreis alleges that the next day, Defendant Caffrey brought distilled water for the CPAP and stated that he had "messed up."[97] Similarly, on October 26, 2021, Kreis requested, but was not provided with distilled water.[98]

Kreis fails to state a plausible claim of deliberate indifference with regard to the failure to provide distilled water on the occasions described. Critically, the supplemented TAC suggests that Kreis is not regularly denied distilled water, and that the occasions described were short-lived aberrations. In these circumstances, he has not stated a plausible claim.[99] Kreis's deliberate indifference claims against Kerstyn and Caffrey will be dismissed with prejudice.

### 3.      Claims Based on Failure to Provide Care

Kreis references several additional incidents that the Court liberally construes as claims of deliberate indifference. He alleges that on September 22, 2021, he came to consciousness on the floor of his cell with swelling on his head and a headache, having apparently suffered a seizure. He requested medical care, and non-Defendant COs Cleffi and Brewer are alleged to have contacted the medical department to request care. Kreis alleges that no medical care was provided for this injury.[100] Kreis alleges that on September 23, 2021, he asked Defendant Keller why no medical care had been provided and she stated she would look into it.[101]

Kreis alleges that he habitually did not receive his epilepsy medication at prescribed times, causing headaches, and that he submitted a grievance about this situation.[102] As an

---

[96] Supp. at 15.

[97] Supp. at 15.

[98] Supp. at 15.

[99] See Merring v. Correctional Care, Inc., No. 4:10-CV-0579, 2010 WL 1485893, at *3 (M.D. Pa. Apr. 12, 2010) (dismissing with prejudice on § 1915 screening inmate's deliberate indifference claim based on failure to provide distilled water for CPAP machine).

[100] TAC at 21.

[101] TAC at 21.

[102] TAC at 21.

example, Kreis alleges that on October 9, 2021, he received his evening medication at 4:30, which was well before the prescribed time.[103] Kreis alleges that when he missed his morning medication on October 11, 2021, he asked that his missed medication be brought to him with his afternoon medication. Defendant Kerstyn advised that Kreis was not scheduled for afternoon medication. Kreis alleges he never received his medication that day.[104]

Kreis alleges that he was scheduled for a follow up appointment at St. Luke's Neurology Associates in September 2021, but that as of November 2021, he had not been taken for that appointment.[105]

Even liberally construed, the conclusory and undeveloped allegations do not state a plausible claim for deliberate indifference. Kreis does not, for example, identify who was responsible for the lack of care following his seizure-related injuries. He does not identify who was responsible for distributing his medication on a particular schedule, or who declined or otherwise failed to adhere to the schedule. Kreis does not allege plausibly that Defendant Kerstyn acted with deliberate indifference merely by stating that he did not regularly receive afternoon medication in an effort to deny him his necessary medication that day. He does not identify who was responsible for the failure to ensure that he received follow-up care at St. Luke's. In light of these deficiencies, Kreis's deliberate indifference claim will be dismissed as not plausible. Kreis will be granted leave to amend because the Court cannot state with certainty that he can never state a plausible deliberate indifference claim.

---

[103] TAC at 22.

[104] TAC at 23.

[105] TAC at 19.

### H.   Claims Based on Grievances

Kreis makes numerous allegations concerning grievances.[106] The Court understands Kreis to be asserting claims against Defendants Horvath, Keller, Harmon, Nicki, Bartholomew,[107] and Caffrey, based on their denials of his grievances, their refusal to consider his grievances, or their refusal to assist him in pursuing grievances. However, claims based on the handling of prison grievances fail because "[p]rison inmates do not have a constitutionally protected right to a grievance process."[108] Accordingly, the facts alleged by Kreis about grievances do not give rise to a plausible basis for a constitutional claim and Kreis's grievance

---

[106] Kreis asserts that at his preliminary arraignment in April 2021, Defendant Horvath told Kreis that his filed grievances "will go no further with me." TAC at 16. He alleges that on May 7, 2021, Defendant Keller threw a grievance Kreis had just handed her to the ground and told him she would not address it. Supp. at 17. Kreis alleges that Defendant Keller reviews all medical grievances and that she ignores or disregards his. Supp. at 17. Kreis alleges that in August, 2021, he filed a grievance because on multiple occasions he had not received his medication during "med. pass" because he was asleep with his CPAP on and could not hear the direction to get up and get his medication. TAC at 19. Kreis alleges that Defendant Harmon denied the grievance because it is Kreis's responsibility to be awake when medication is provided. TAC at 23. Kreis alleges that he requested a grievance form from Defendant Nicki to address Primecare's failure to provide care on September 22 and Nicki refused to provide one. TAC at 22. Kreis alleges that in October 2021, Defendant Bartholomew denied his grievance based on removal from medical observation, despite knowing about his medical needs. Supp. at 13, 21. Kreis alleges that on October 14, 2021, he asked Defendant Caffrey about grievances he had filed regarding the lack of medical attention on September 22 and Defendant Kerstyn's failure to provide his medication on October 11 and Defendant Caffrey allegedly told Kreis he would look into them. Kreis alleges he never heard anything about these grievances. TAC at 23. Kreis alleges that on October 23, 2021, despite several requests, he was unable to obtain distilled water for his CPAP, and that he immediately filed a grievance, to which he never received a response. Supp. at 14.

[107] Kreis alleges that on October 9, 2021, he wrote to Defendant Bartholomew about the lack of medical care in Kreis's current housing situation. Supp. at 22.) He does not state whether there was a response. This is the only other allegation as to Bartholomew in the supplemented TAC. Kreis does not allege that Bartholomew was involved in the conduct giving rise to his claims, other than his denial of a grievance and presumed receipt of a letter, and so Kreis has not alleged a plausible claim against Bartholomew. *See Rode*, 845 F.2d at 1207. To the extent Kreis seeks to assert a claim against Bartholomew based on his role as a supervisor, based on the legal requirements for supervisor liability provided above, he has not asserted a plausible claim since he does not allege personal involvement or the establishment of a policy with deliberate indifference to the consequences that directly caused constitutional harm. Kreis may amend his claim against Bartholomew because the Court cannot, at this time state that Kreis can never state a claim against Bartholomew.

[108] *Jackson v. Gordon*, 145 F. App'x 774, 777 (3d Cir. 2005) (*per curiam*); *see also Caldwell v. Beard*, 324 F. App'x 186, 189 (3d Cir. 2009) (*per curiam*). *See also Woods v. First Corr. Med. Inc.*, 446 F. App'x 400, 403 (3d Cir. 2011) (*per curiam*) ("[B]ecause a prisoner has no free-standing constitutional right to an effective grievance process, [a prisoner] cannot maintain a constitutional claim . . . based upon his perception that [the defendant] ignored and/or failed to properly investigate his grievances." (citing *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991))).

based claims against Defendants Horvath, Keller, Harmon, Nicki, Bartholomew, and Caffrey will be dismissed with prejudice.

## IV.     CONCLUSION

For the reasons stated, the following claims are dismissed with prejudice: official capacity claims against Defendants Wahlcheski, Keller, Polina, Caffrey, Nicki, and Kerstyn; grievance based claims against Defendants Horvath, Keller, Harmon, Nicki, Bartholomew, Caffrey and Klienman; conditions of confinement claims related to showers and recreation; and deliberate indifference claims against Kerstyn and Caffrey based on failure to supply distilled water. Kreis's due process claims against Defendants Gazzano and Douglas, his deliberate indifference claims against Polina, Keller and Harmon, the claims as to the conditions of the cell, and his claims against Primecare are dismissed without prejudice pursuant to § 1915(e)(2)(B)(ii). He will be permitted to proceed on his remaining claims. Kreis will be granted leave to file a Fourth Amended Complaint. Should he choose to do so, his plausible claims will not be served at this time. An appropriate Order follows.

**BY THE COURT:**

**/s/ Cynthia M. Rufe**

_____

**CYNTHIA M. RUFE, J.**