IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AUGUST B. KREIS, IV<br><br>Plaintiff,<br><br>v.<br><br>NORTHAMPTON COUNTY PRISON, *et al.*<br><br>Defendants. | CIVIL ACTION NO. 21-2360 |

MEMORANDUM OPINION

Rufe, J.                                                                                                    September 29, 2025

In this action brought under 42 U.S.C. § 1983, *pro se* Plaintiff August Byron Kreis, IV has filed suit asserting claims concerning the conditions of his confinement at Northampton County Prison ("NCP") between November 9, 2020, and February 15, 2023. He brings claims against PrimeCare Medical, Inc.; Jennifer Keller, RN; Paulina Foley, PA-C; Shane O. Caffery, LPN; Kersyn Aravich, LPN; and Nicole Brooks, LPN (the "PrimeCare Defendants"), and against James C. Kostura, Mark T. Bartholomew, John Harman, Charles Horvath, Jeremy Ackerman, Michael Gazzano, Jose Santiago, Fernando Arias, Andrew Kuczma, and Jeremy Walker (the "NCP Defendants"). All Defendants have moved for summary judgment, which Plaintiff opposes. For the reasons stated below, the motions will be granted in part and denied in part.

I.      **LEGAL STANDARD**

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[1] A fact

---

[1] Fed. R. Civ. P. 56(a).

is material if it could affect the outcome of the suit, given the applicable substantive law, and a dispute is genuine if the evidence presented is such that a reasonable jury could return a verdict for the nonmoving party.[2] In evaluating a summary judgment motion, a court "must view the facts in the light most favorable to the non-moving party," and make every reasonable inference in that party's favor.[3]

A court may not weigh the evidence or make credibility determinations at the summary judgment stage.[4] Nevertheless, the party opposing summary judgment must support each essential element of the opposition with concrete evidence in the record.[5] This requirement upholds the "underlying purpose of summary judgment [which] is to avoid a pointless trial in cases where it is unnecessary and would only cause delay and expense."[6] "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[7] Therefore, if, after making all reasonable inferences in favor of the non-moving party, the court determines there is no genuine dispute as to any material fact, then summary judgment is appropriate.[8] Finally, although the Court liberally construes Plaintiff's *pro se* filings, Plaintiff must set forth facts, supported by affidavits or other evidence of record, sufficient to survive summary judgment.[9]

---

[2] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[3] *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).

[4] *Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998).

[5] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

[6] *Walden v. Saint Gobain Corp.*, 323 F. Supp. 2d 637, 641 (E.D. Pa. 2004) (citation omitted).

[7] *Anderson*, 477 U.S. at 249–50 (citations omitted).

[8] *Wisniewski v. Johns-Manville Corp.*, 812 F.2d 81, 83 (3d Cir. 1987).

[9] *Houseknecht v. Doe*, 653 F. Supp. 2d 547, 555 (E.D. Pa. 2009).

## II.     CLAIMS AGAINST PRIMECARE DEFENDANTS

There is no question that Plaintiff has been diagnosed with epilepsy, which causes him to experience seizures. He also has been treated for PTSD and depression. Before his incarceration, Plaintiff was a patient at St. Luke's Neurology, where he was prescribed the anticonvulsant medications Trileptal, Vimpat, and Onfi. Onfi must be taken once daily and the others twice a day. Kreis also had a Vagus Nerve Stimulation ("VNS") device implanted, which is designed to help with seizures.[10] Kreis had the use of this device during his incarceration.

When he was incarcerated in November 2020, Kreis was evaluated by medical personnel and kept on the prescribed medications. The pharmacy provided a generic form of Trileptal.[11] He testified that he did not receive the medications 12 hours apart, as ordered by his neurologist; however, although he stated that the times varied, he did receive his medications during the morning med pass and the evening med pass.[12] More seriously, Kreis asserts that he did not receive his medication at all on multiple occasions. Kreis testified that the first week at NCP he did not receive any medication.[13] He also states that he did not receive Onfi on November 11, 2020; Vimpat was not available in the morning or evening on December 6, 2020, or on the morning of December 7, 2020 and again on December 9, 2020; and he appears to state that he did not receive any anticonvulsant medication between December 11 and December 14, 2020.[14] There is a note in the medical records for December 4, 2020, by Defendant Caffrey stating that

---

[10] Fourth Amend, Compl. at 49 [Doc. No. 55].

[11] Doc. No 174-2 at ECF page 40; *see* Pl.'s Opp. PrimeCare Defs.' Mot. at 1-2 [Doc. No. 210]. The record is not clear as to whether Kreis received the generic or name-brand version of Vimpat; however, the directions from St. Luke's specified brand-name medication only for Trileptal. *See, e.g.*, Doc. No. 174-2 at ECF page 104.

[12] Kreis Dep. at 185-87 [Doc. No. 181-1].

[13] Kreis Dep. at 177 [Doc. No. 181-1].

[14] Pl.'s Opp. PrimeCare Defs.' Mot. Summ. J at ECF pages 10-11 [Doc. No. 179].

"Infi [sic] and Vimpat r/o'd," which may indicate that these medications were not in stock.[15] Kreis alleges that he missed nine doses by the time he saw Paulina Foley on December 14, 2020.[16] The records also reflect that Plaintiff suffered several seizures at NCP, including on December 8, 2020.[17] Defendant Caffery was responsible for stocking the medications at NCP at the relevant time.[18]

During his incarceration, Kreis saw a physician or physician's assistant at NCP between 15 and 30 times, and the nursing staff numerous times.[19] Kreis also was transported to St. Luke's for evaluation seven times. At the first (February 15, 2021) and second (March 25, 2021) visits there were no recommendations for Plaintiff to be assigned brand name Trileptal, or housed in an area where he could be observed while sleeping.[20] The St. Luke's visit notes from July 27, 2021, state that Vimpat and "oxcarbazepine" (the generic form of Trileptal) be dosed 12 hours apart.[21] It was not until the visit of November 23, 2021, that St. Luke's included a directive to ensure that Plaintiff received brand-name Trileptal, that St. Luke's be contacted immediately if this was not possible, and that he be observable while sleeping.[22] The treatment notes reflect that after that visit, the brand name Trileptal was obtained, although a note dated September 5, 2022, reflects that the brand-name was not in stock and that Kreis agreed to take the generic form instead.[23]

---

[15] Medical Records at ECF page 16 [Doc. No. 176-6].

[16] Pl.'s Opp. PrimeCare Defs.' Mot. Summ. J. at ECF page 20 [Doc. No. 179].

[17] *See* Medical Records at ECF page 15 [Doc. No. 176-6].

[18] Caffery Interrog. Resp. at ECF page 127 [Doc. No. 174-2]; Pl.'s Opp. PrimeCare Defs.' Mot. Summ. J. at ECF page 29 [Doc. No. 179].

[19] Kreis Dep. at 171-72 [Doc. No. 181-1].

[20] PrimeCare Defs.' Mot. Summ. J. at ECF page 108-12 [Doc. No. 174-2]

[21] *Id.* at ECF page 113.

[22] *Id.* at ECF page 116.

[23] Medical Records at ECF page 5 [Doc. No. 176-6].

4

Plaintiff submitted a sick call about not receiving brand-name Trileptal on February 1, 2022; that request was acknowledged by Caffery.[24] It is not clear from the records how long Kreis was given the generic medication. There are no notations in the medical records that at times Kreis did not get up to receive his medication.[25]

In the verified interrogatory responses, PrimeCare Defendants contend that they never ordered the generic form of medication; instead, the pharmacy had provided the generic version until PrimeCare affirmatively requested brand-name Trileptal based on the recommendation at the November 23 visit to St. Luke's.[26] On February 2, 2022, Plaintiff complained that he was not receiving brand name Trileptal, and medical staff showed him the name brand Trileptal card containing his medication.[27]

Plaintiff was housed on E Tier where the correctional officers made rounds every 30 minutes and would observe Plaintiff. The cell was also directly adjacent to the officer's podium.[28] Plaintiff did not have a cellmate at this time.[29] However, Plaintiff testified that he experienced numerous seizures on E Tier, and that he was removed from medical observation, which put him at greater risk of death due to possible delay in treatment.[30]

Plaintiff also states that he received no mental health care at NCP. However, the medical records show that he was referred for psychological treatment and was prescribed medication

---

[24] Pl.'s Opp. PrimeCare Defs.' Mot. Summ. J. at ECF page 35 [Doc. No. 179].

[25] Medical Records at ECF page 6 [Doc. No. 176-6].

[26] Caffrey Interrog. Resp. at ECF page 127-28 [Doc. No. 174-2].

[27] PrimeCare Defs.' Mot. Summ. J. at ECF page 79 [Doc. No. 174-2].

[28] *Id*. at 93-94; Kreis Dep. at 179 [Doc. No. 181-1].

[29] Kreis Dep. at 180 [Doc. No. 181-1].

[30] Kreis Dep. at 188 [Doc. No. 181-1].

until he stated that he did not want to take it anymore.[31] PrimeCare Defendants argue that they did not deny or delay access to appropriate medical care, and they have produced the expert report of physician Alfred Joshua, who opined that Kreis's treatment at NCP met appropriate standards of care.[32]

"Section 1983, enacted as part of the Civil Rights Act of 1871, establishes a federal remedy against a person who, acting under color of state law, deprives another of constitutional rights."[33] The Constitution requires that "prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'"[34] Therefore, the Supreme Court has established that prison officials violate the Constitution by "intentionally denying or delaying access to medical care."[35] "A medical need is 'serious,' . . . if it is 'one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention.'"[36] Deliberate indifference is a "subjective standard of liability consistent with

---

[31] Medical Records at ECF page 5-6 [Doc. No. 176-6]. In his Fourth Amended Complaint, Kreis raised claims concerning his CPAP machine. However, in his deposition he repeatedly stated that he was not pursuing such claims. Kreis Dep. at 193-96 [Doc. No. 181-1]. Although Plaintiff raises several points as to the CPAP machine in his opposition, the Court deems those claims withdrawn based on his definite deposition testimony.

[32] PrimeCare Defs.' Mot. Summ. J. at ECF page 140 [Doc. No. 174-2].

[33] *Burella v. City of Philadelphia*, 501 F.3d 134, 139 (3d Cir. 2007) (citations omitted). PrimeCare Defendants do not dispute that they were acting under color of state law as they provide medical services at NCP through a contract with the County.

[34] *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–527 (1984)). Typically, denial of medical care claims are asserted under the Eighth Amendment's prohibition on cruel and unusual punishment. *See id.* at 534. If Kreis was a pretrial detainee, his "claim should be evaluated under the Due Process Clause of the Fourteenth Amendment, as opposed to the Eighth Amendment." *Edwards v. Northampton Cnty.*, 663 F. App'x 132, 135 (3d Cir. 2016) (citing *Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005)). Nevertheless, because "the Fourteenth Amendment affords pretrial detainees protections at least as great as the Eighth Amendment protections available to a convicted prisoner," *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 581 (3d. Cir. 2003) (citation and internal quotation omitted), the same standard applies in either event.

[35] *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976)).

[36] *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (quoting *Pace v. Fauver*, 479 F. Supp. 456, 458 (D.N.J. 1979), *aff'd*, 649 F.2d 860 (3d Cir. 1981)).

recklessness as that term is defined in criminal law."[37] To act with deliberate indifference is to "recklessly disregard a substantial risk of serious harm."[38] "[F]inding a prison official liable for violating a prisoner's Eighth Amendment rights requires proof that the official 'knows of and disregards an excessive risk to inmate health or safety.'"[39] To support a § 1983 claim against PrimeCare, "a private corporation providing medical services under contract with a state prison system, a plaintiff must be able to show 'a policy or custom that resulted in the alleged constitutional violations.'"[40]

Upon careful review of the record, the Court concludes that Plaintiff has not shown that his cell placement constituted deliberate indifference to a serious medical need. Although not under medical observation, Plaintiff was placed in a cell adjacent to the duty officer's podium on a tier where the corrections officers made rounds every 30 minutes. A reasonable jury could not conclude that this placement manifested deliberate indifference to Kreis's serious medical needs. Nor can Plaintiff establish deliberate indifference in connection with the provision of generic Trileptal before the directive from St. Luke's in November 2021. However, Plaintiff has testified that he sometimes received generic Trileptal after that date (which is supported by at least one medical record), and he also testified that he repeatedly failed to receive his anticonvulsants at all his first week in custody and repeatedly in December 2020. Defendant Caffrey was in charge of ordering the medications at NCP. A repeated failure to provide necessary medication is enough to create an inference of deliberate indifference against prison officials who fail to provide

---

[37] *Natale*, 318 F.3d at 582 (quoting *Nicini v. Morra*, 212 F.3d 798, 811 (3d Cir. 2000)).

[38] *Baker v. Younkin*, 529 F. App'x 114, 115 (3d Cir. 2013) (quoting *Giles v. Kearney*, 571 F.3d 318, 330 (3d Cir. 2009)).

[39] *Natale*, 318 F.3d at 582 (quoting *Farmer*, 511 U.S. at 837); *see also Gunter v. Twp. of Lumberton*, 535 F. App'x 144, 149 (3d Cir. 2013).

[40] *Alexander v. Monroe Cnty.*, 734 F. App'x 801, 805 (3d Cir. 2018) (quoting *Palakovic v. Wetzel*, 854 F.3d 209 (3d. Cir. 2017)) (emphasis omitted).

necessary medication.[41] It is undeniable that Plaintiff required these anticonvulsants and the evidence shows that Plaintiff suffered a seizure on December 8, 2020, after he states he did not receive his medication for several days.[42] Caffrey was in charge of the medication ordering and supply, and summary judgment will be denied as to this Defendant, and granted as to the other PrimeCare Defendants, including PrimeCare itself. Plaintiff has not identified a custom or policy of PrimeCare that led to a deprivation of his rights; regardless of whether PrimeCare has a policy of ordering generic drugs by default, the record establishes that the policy did not bar Plaintiff from receiving brand-name Trileptal upon the directive of St. Luke's.

### III.    CLAIMS AGAINST NCP DEFENDANTS

To evaluate a claim of excessive force, the court must examine "whether under the totality of the circumstances, 'the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivations.'"[43] Because "police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation," the court must consider the perspective of a reasonable officer on the scene rather than using the 20/20 vision of hindsight in evaluating reasonableness.[44]

In assessing whether the officers' actions were reasonable, courts consider factors including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade

---

[41] *Concepcion v. Russell*, No. 25-CV-4479, 2025 WL 2447792, at *4 (E.D. Pa. Aug. 25, 2025).

[42] This issue is not addressed in Defendants' expert report.

[43] *Kopec v. Tate*, 361 F.3d 772, 776 (3d Cir. 2004) (quoting *Graham v. Connor,* 490 U.S. 386, 397 (1989)); *see also Santini v. Fuentes,* 795 F.3d 410, 417 (3d Cir. 2015).

[44] *Graham*, 490 U.S. at 396–397.

arrest by flight."[45] Courts also consider "the physical injury to the plaintiff, the possibility that the persons subject to the police action are themselves violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time."[46] At summary judgment, once a court "identif[ies]the relevant facts and draw[s] all inferences in the non-movant's favor, the reasonableness of an officer's actions is a pure question of law."[47]

*December 8, 2020 Incident*

Defendant Kuczma was escorting Plaintiff through the prison for a video court hearing.[48] Taking the facts in the light most favorable to Plaintiff, Plaintiff testified that he had missed days of his medication, had a seizure, and collapsed.[49] Kuczma initiated a code blue, and Kreis was strapped to a transport chair and taken to the medical department. When Plaintiff returned to awareness, Defendant Ackerman "had the taser to [Plaintiff's] chest."[50] Plaintiff had been tased repeatedly.[51] Kreis testified that as he came out of the seizure, he realized that he was holding on to an officer's shirt, and immediately let go and apologized.[52] Kreis was not aware of what happened before that.[53] During the incident, Plaintiff had one hand cuffed and was bound to the

---

[45] *Anglemeyer v. Ammons*, 92 F.4th 184, 188 (3d Cir. 2024) (citing Graham, 490 U.S. at 396).

[46] *Id.* at 189 (3d Cir. 2024) (internal citations omitted).

[47] *Johnson v. City of Phila.*, 837 F.3d 343, 349 (3d Cir. 2016) (citation omitted).

[48] Kreis Dep. at 115. [Doc. No. 181-1].

[49] *Id.* at 115-16.

[50] *Id.* at 118.

[51] *Id.* at 119.

[52] *Id.* at 120, 122.

[53] *Id.* at 126.

chair with straps.[54] Plaintiff testified as to a later conversation with Kuczma: "I asked him, why did you tase me in a seizure when you started it? His exact words were, I did not tase you at all. You were acting delirious. I did not decide to use a taser on you." That's what he said to me."[55]

Defendants controvert this evidence. The nurse on duty stated that Kreis was alert and oriented before he was tased.[56] Defendants also produced a body-worn camera video.[57] This video does not capture the beginning of the incident. Instead, as it begins several officers run into the room where Plaintiff is sitting in a chair and appears to be holding on to the shirt of an officer. Plaintiff is strapped to the chair at the ankles and it appears that his other hand is restrained. The video shows blood on Plaintiff's abdomen and the removal of at least two taser darts. As he is escorted from the medical department a reasonable viewer could determine that Plaintiff is cooperative and appears to be confused.[58]

Upon review of all the evidence produced, a reasonable jury could conclude that Kreis was experiencing an epileptic seizure while secured by his ankles and one wrist to a chair, and that the repeated use of a taser was an excessive reaction to the fact that he had grabbed onto an officer's shirt; a jury could conclude that there was no immediate danger to the officer and that the repeated use of the taser was unwarranted under the circumstances. Summary judgment will be denied as to Defendant Ackerman, and granted as to the other Defendants, against whom there is no evidence of excessive force.

---

[54] *Id.* at 129.

[55] *Id.* at 119-120.

[56] Medical Records at ECF page 15 [Doc. No. 176-6].

[57] Video of Dec. 8, 2020 Incident [Doc. No. 176-8].

[58] Plaintiff's opposition includes a number of declarations by him as to the effects of epilepsy which the Court considers solely as evidence of Kreis's own perceptions during a seizure. Mem. Opp. at ECF pages 132-34 [Doc. No. 188].

*Incident of April 14, 2021*

Defendants contend that this incident began when Gazzano entered Plaintiff's cell at a nurse's request to see if Plaintiff had a container of distilled water for his CPAP machine. Gazzano noticed headphones, and asked if Plaintiff had a radio, which was not permitted in disciplinary segregation.[59] Defendants contend that Plaintiff slammed Gazzano's hand in a drawer, lunged at Gazzano, and then grabbed Gazzano's taser and threw it to the ground.[60] Other officers responded, and at that time, Plaintiff was holding on to the foot of the bunk bed, and did not let go of it.[61] Lieutenant Rinker used a "drive stun" to Plaintiff's back or shoulder, and Plaintiff then responded to commands.[62] Rinker is not named as a defendant, and Plaintiff does not contest the propriety of Rinker's actions.[63] Kreis's version of events differs significantly: Plaintiff testified that Gazzano came into his cell, searched it, screamed at Plaintiff and shoved him, causing Plaintiff's head to bounce off the corner of the right bunk, after which Plaintiff threw the taser in self-defense.[64]

Defendants produced video from Rinker's body-worn camera.[65] When the recording begins, Plaintiff is on the floor of his cell with four officers around him; he is told to let go of the bunk. There is discussion about a search and a radio and batteries, and it is difficult to tell if Plaintiff was tased. After Plaintiff was released and in his cell alone, he states that he was pushed backwards and that is why he resisted orders. A medical staffer arrives to check for injuries; an

---

[59] Incident Report at ECF page 6 [Doc. No. 176-11].

[60] *Id*.

[61] *See generally id*.

[62] *Id*. at ECF page 6.

[63] Kreis Dep at 100-01 [Doc. No. 181-1].

[64] *Id*. at 71-74.

[65] Video of April 14, 2021 Incident [Doc. No. 176-12].

11

officer says Plaintiff was tased on his back but there are no puncture wounds; the medical staffer leaves after a brief evaluation, and Plaintiff is uncuffed and left in his cell. Plaintiff testified in his deposition that he took responsibility for breaking the taser, and it is uncontested that Plaintiff admitted to a charge of disarming a law enforcement officer and criminal mischief in connection with the incident.[66]

Given the conflicting testimony, summary judgment is unwarranted on this claim as to Gazzano. The key disputed fact is whether Gazzano initially used physical force on Kreis without justification. In addition to Kreis's testimony on the point, there is also the fact that Kreis argues that Gazzano did not comply with NCP policy in entering his cell. In responses to interrogatories, Gazzano admitted that he was trained to belt, cuff, and remove an inmate on disciplinary segregation from the cell before entering the cell; that was not done here.[67] Finally, Plaintiff's conviction does not bar his claim; the Third Circuit has held that a conviction for resisting arrest "would not be inconsistent with a holding that the officers, during a lawful arrest, used excessive (or unlawful) force in response to his own unlawful actions."[68]

*Other incidents*

In his deposition, Plaintiff also testified that he requested medical help from Defendants Arias and Santiago, but that they told him that he was fine and to just sit down, and he had a seizure five minutes later.[69] Plaintiff has not shown these Defendants knew that it was emergency situation, that they failed to respond when the seizure occurred, or that anything would have been done differently during the brief five-minute period. In addition, he alleged that

---

[66] Kreis Dep. at 113 [Doc. No. 181-1]; Guilty Plea [Doc. No. 176-15].
[67] Gazzano Interrog. Resp. at 2 [Doc. No. 175].
[68] *Lora-Pena v. F.B.I.*, 529 F.3d 503, 506 (3d Cir. 2008) (per curiam).
[69] Kreis Dep. at 164-65 [Doc. No. 181-1].

Kuczma placed him with a cellmate who had talked about hurting Plaintiff and who then assaulted Plaintiff.[70] However, Plaintiff has not produced sufficient evidence regarding the cell assignment or that Kuczma made the decision. Summary judgment will be granted on these claims.

### *Qualified Immunity*

The NCP Defendants also move for summary judgment on the basis of qualified immunity. "An official sued under § 1983 for an alleged constitutional violation is entitled to qualified immunity unless he (1) violated a constitutional right that (2) was clearly established when he acted. For a right to be "clearly established," the contours of that right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."[71] In circumstances similar to those at issue here, the Court must look to questions such as: "When [Plaintiff] was not responding to the directives of the guards, was [he] actively resisting or merely non-compliant?"[72] In addition, the Court must look to whether Kreis posed a threat to himself and others; why he was tased and how many times; and what prior knowledge of his condition Defendant had.[73] The Court determines that qualified immunity is not warranted here as to the claims moving forward. It is well established that corrections officers cannot use excessive force that amounts to punishment.[74] Viewing the circumstances "from the perspective of a reasonable officer," a reasonable jury could conclude that the force used was objectively unreasonable.[75]

---

[70] Kreis Dep. at 166 [Doc. No. 181-1]; Pl.'s Opp. PrimeCare Defs.' Mot. Summ. J. at ECF page 81 [Doc. No. 179].

[71] *Stringer v. Cnty. of Bucks*, 141 F.4th 76, 85 (3d Cir. 2025) (internal citations and quotation marks omitted).

[72] *Id*. at 89.

[73] *Id.*

[74] *See Jacobs v. Cumberland Cnty.*, 8 F.4th 187, 191 (3d Cir. 2021).

[75] *Id*.

## IV.    CONCLUSION

For the reasons discussed above, the motions for summary judgment will be granted to all claims except the claim against Caffery regarding missed doses of anticonvulsant medication and the claims for excessive force against Ackerman and Gazzano. An order will be entered.